NOTICE
Decision filed 08/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250810-U

NO. 5-25-0810

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MARK DONHAM and CRAIG RHODES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Massac County. |
| | ) | |
| v. | ) | No. 24-MR-7 |
| | ) | |
| ILLINOIS DEPARTMENT OF NATURAL RESOURCES; ILLINOIS NATURE PRESERVES COMMISSION; NATALIE FINNIE, Director of Illinois Department of Natural Resources; and ANN HOLTROP, Director of Natural Heritage Division of Illinois Department of Natural Resources, | ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Sarah K. Tripp, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the dismissal with prejudice of plaintiffs' complaint, where plaintiffs lacked standing as to counts I, III, and IV of their complaint, and failed to state a claim as to count V.

¶ 2   On May 3, 2024, plaintiffs, Mark Donham and Craig Rhodes, filed a five-count complaint against defendants: the Illinois Department of Natural Resources (hereinafter IDNR); the Illinois Nature Preserves Commission (hereinafter INPC); Natalie Finnie, in her capacity as the Director of IDNR; and Ann Holtrop, in her capacity as the Director of the Natural Heritage Division of IDNR. Count I requested injunctive relief concerning defendants' enforcement and process for

1

development of the master plan for the Cretaceous Hills Nature Preserve (hereinafter CHNP). The relief sought in count II is not at issue on this appeal. Count III asserted that plaintiffs' due process rights were violated when they were afforded no input or ability to challenge the master plans for CHNP and requested injunctive relief similar to that requested in count I. Count IV sought a declaratory judgment concerning defendants' process for creating and implementing master plans for CHNP and other Illinois nature preserves. Count V sought injunctive relief concerning defendants' response to their Freedom of Information Act requests.

¶ 3     On September 6, 2024, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), asking that counts I-IV be dismissed for lack of standing and sovereign immunity pursuant to section 2-619 of the Code (*id.* § 2-619), and that count V be dismissed for failure to state a claim pursuant to section 2-615 of the Code (*id.* § 2-615). After hearing arguments on the motion, the circuit court entered an order dismissing all counts with prejudice. This appeal timely followed.

¶ 4                                    I. BACKGROUND

¶ 5     On May 3, 2024, plaintiffs filed a five-count complaint against defendants. In the complaint, plaintiffs stated that they were "landowners and taxpayers in Pope and Massac Counties" in Illinois, two counties within which the CHNP resides, and that the "fatally flawed management plan" for CHNP "was rushed [and] caused and threatens to further cause damage to Plaintiffs' property and health." Plaintiffs asserted that they "have an ongoing interest in preserving the beauty, diversity and solitude provided by the" CHNP "as nearby landowners who for decades have used and enjoyed" CHNP. Plaintiff Donham lives within half a mile of CHNP and has lived there for over 43 years; plaintiff Rhodes lives within a mile of CHNP and has lived there for over 40 years.

2

¶ 6    The complaint asserted that, "On March 8, 2023, during a prescribed burn at the CHNP, smoke from the burn was not managed in accordance with the Illinois Smoke Management plan and stayed on the ground and covered *** Mr. Rhodes' property [and he] is sensitive to smoke, and his health was adversely impacted by the exposure." It further alleged that plaintiff Donham "has had similar experiences from prescribed burns on CHNP over the past 4 decades. The smoke from the March 8, 2023, burn drifted onto his property." Following the prescribed burn, multiple correspondence were exchanged between plaintiffs and defendants. Many of the emails and letters sent from plaintiffs questioned the need, purpose, or use of the prescribed burns. Plaintiffs attached multiple exhibits to their complaint: (1) an email from plaintiff Donham to defendant Holtrop on May 12, 2023; (2) an email from defendant Holtrop to defendants on June 21, 2023; (3) an email from plaintiffs to defendant IDNR on December 11, 2023; (4) an email from plaintiffs to defendant IDNR on January 4, 2024; (5) a letter from defendant IDNR's General Counsel, Renee Snow, to plaintiffs on February 20, 2024; (6) the CHNP master plan that took effect December 2023; and (7) pictures of felled trees in the CHNP.

¶ 7    Count I of the complaint sought an injunction to prohibit defendants from enforcing the CHNP master plan. It alleged that there were "significant gaps" between the plan and the Illinois Administrative Code on conservation and the management of nature preserves. Count I listed a number of issues with the plan, *inter alia*, that it failed to describe the diversity or amount of floral and faunal species within CHNP; failed to discuss adjacent land; and failed to describe some of the aspects of CHNP, including its uniqueness and historical significance. Count I alleged, "Plaintiffs and the public have suffered and are suffering irreparable harm from the INPC's failure to manage the CHNP in accordance with its own rules and regulations, including the Handbook." Count I further alleged, "The balance of harms and the public interest clearly favor Plaintiffs, who

3

are seeking to have agencies funded by taxpayers follow their own rules for the benefit of current and future Illinois citizens." Plaintiffs requested that the circuit court enter judgment "preliminarily and permanently enjoining Defendants from managing the CHNP pursuant to the CHNP Master Plan," to order defendants to withdraw the December 2023 master plan, to order defendants to develop a new master plan "consistent with the Defendant[s'] rules and regulations," to order defendants to provide public notice and a hearing "to compile an administrative record" for the development of a new master plan, and award plaintiffs reasonable attorney fees, costs, and anything else the court deemed just and proper.

¶ 8       Count II was dismissed with prejudice and is not at issue on this appeal. The allegations in counts I and II were incorporated by reference within counts III, IV, and V. It was alleged in count II that defendants were operating under color of state law, and that plaintiffs "have legitimate claims of entitlement to be free from harmful smoke" entering their property from defendants' prescribed burns, and that the smoke "prevent[ed] them from using and enjoying their respective properties." Plaintiffs also asserted that they "have a liberty interest in being free from the harmful and unhealthy effects of smoke from harmful smoke from [defendants'] prescribed burns entering onto their property. Mr. Rhodes suffers from respiratory ailments, and has undergone sinus surgery, which smoke from [defendants'] prescribed burns exacerbates." Count II further alleged that defendants failed to develop a master plan that was consistent with defendants' rules and regulations, "have willfully and recklessly failed to appropriately follow *** even the flawed *** master plans that have been in effect, and have refused to even discuss with Plaintiffs correcting the [master plan] and issuing a new master plan that corrects the many defects in the December 1, 2023, CHNP Master Plan."

¶ 9    Count III sought injunctive relief for alleged violations of plaintiffs' due process rights similar to what was alleged in count II. Count III, however, further alleged that plaintiffs' due process rights were violated because defendants "have provided no way for the Illinois public, including Plaintiffs, to provide input into master plans for nature preserves prior to their issuance, and provide no way to challenge flaws in master plans after they are issued." Count III continued, "Plaintiffs have suffered and are continuing to suffer irreparable harm for which they have no adequate legal remedy." Plaintiffs' prayer for relief for count III was the same as their prayer for relief in count I.

¶ 10    In count IV plaintiffs sought a declaratory judgment. Plaintiffs asked the circuit court to enter a declaration stating: (1) that they had a right to notice and a hearing with defendants regarding the development of the CHNP master plan, (2) that the master plan and its predecessor failed to comply with defendants' rules and regulations, (3) that defendants must prepare drafts of master plans for CHNP before signing and issuing the plans, and (4) that defendants must communicate with the Illinois Endangered Species Commission and/or the U.S. Fish and Wildlife Service "concerning the protection and management of endangered species on Illinois Nature Preserves in connection with the planning and development of master plans for the CHNP and other Illinois Nature Preserves." Plaintiffs also sought any other relief the circuit court deemed just.

¶ 11    Count V asserted that defendants violated the Freedom of Information Act (FOIA) (5 ILCS 140/7 (West 2022)). Plaintiffs asserted that they "made a series of implicit and explicit FOIA requests to Defendants." Plaintiffs stated that their requests received untimely responses, defendants "failed to provide complete responses in that they withheld communications concerning the CHNP management plan between Ms. Feng and Roger Jansen," and "improperly

redacted the names and species of endangered and threatened species located or likely to be found on the CHNP." Plaintiffs asserted that defendants' reliance on the exemption to FOIA in section 7(1)(i) for not providing the names of threatened or endangered species was "misplaced" because defendants have provided names for threatened or endangered species in other publicly available materials.

¶ 12    Relevant to the "implicit and explicit FOIA requests" alleged in count V were the exhibits attached to the complaint with communications and descriptions of unattached communications between plaintiffs and defendants. In exhibit 1, the email sent on May 12, 2023, plaintiff Donham states that he has "some quest[i]ons," and asks a number of questions, including: (1) how specific species were being protected, (2) defendant Holtrop's definition of "historically," (3) what evidence defendant Holtrop had that periodic fire would relieve pressure on the preserve, (4) what evidence defendant Holtrop had that periodic fires help maintain oak-hickory forests in Southern Illinois, and (5) why defendant Holtrop was "keeping fire out of the seeps?" In exhibit 2, the email sent on June 21, 2023, defendant Holtrop replied, explaining what "protect" and "historically" meant within that context. Defendant Holtrop referred plaintiffs to websites that would answer their questions on the need for periodic fire, and also answered his question regarding seeps. She then stated, "Division of Natural Heritage staff rou[ti]nely do not share loca[ti]ons of threatened and endangered species outside of our data sharing process, which can be found here: h[tt]ps://naturalheritage.illinois.gov/dataresearch/access-our-data.html."

¶ 13    Plaintiffs described, but did not attach as an exhibit, an alleged email communication of June 30, 2023, from plaintiff Donham to defendant Holtrop and Feng noting that some of his questions had not been answered, that some of the information Holtrop provided was not consistent with what was occurring in CHNP, and some of the information was out of date. Plaintiffs

6

described, but did not attach as an exhibit, an alleged email communication of July 28, 2023, from plaintiff Donham to defendant Holtrop and Feng, stating that his questions about the management plan still had not been answered. Plaintiffs described, but did not attach as an exhibit, an alleged September 20, 2023, letter from plaintiffs to IDNR, stating that plaintiffs had "observed a large invasive grass was populating the preserve, particularly the area cut and burned on March 8, 2023, as well as other features that concerned" them, after having recently visited CHNP.

¶ 14    Plaintiffs described, but did not attach as an exhibit, an alleged email communication of October 13, 2023, stating that "Donham submitted a FOIA request to the IDNR through their online FOIA submission form." Plaintiff Donham alleged that he did not receive online confirmation of the form being submitted, so he "followed up immediately by sending the request via email to Director Holtrop. On Oct. 13, Ms. Holtrop acknowledged receipt of the request." Plaintiffs alleged that, though the response was untimely, IDNR eventually "responded to Mr. Donham's October 13, 2023, FOIA request." Plaintiffs further alleged that the response to the request was incomplete, and that plaintiff Donham "made a series of additional FOIA requests to follow up on information referenced but not provided in the responses." Those alleged additional FOIA requests were not attached as exhibits to the complaint.

¶ 15    Both the December 11, 2023, communication and the January 4, 2024, communication were attached to the complaint as exhibits 3 and 4 respectively. The December 11, 2023, email from plaintiffs to IDNR requested a hearing on any new CHNP management plan. It referenced that plaintiffs submitted "a very simple FOIA to IDNR" on December 1, 2023, seeking an agency directory so plaintiffs could get the contact information for the IDNR Director. Plaintiffs also requested in the December 11, 2023, email "all no[ti]ces that were published pursuant to th[e Nature Preserves regulation], minutes or recordings of any public mee[ti]ngs held pursuant to that

7

rule and all communica[ti]ons, emails etc. that refer to that rule. Also, before you do anything else up in CHNP we request a hearing." The January 4, 2024, email from plaintiffs was meant to supplement the December 11 email. Plaintiffs requested a hearing once more, and stated that "[o]nly with the informa[ti]on about which species and what their habitat requirements are, and generally where they are located can the public rightly scru[ti]nize the ac[ti]ons of the agency, par[ti]cularly when the agency is disturbing and impairing the preserve." Much of this email is best summed as plaintiffs asking for a hearing, voicing a number of concerns they had, taking issue with the CHNP management plan, and posing rhetorical questions to defendants.

¶ 16    The complaint described, but did not attach as an exhibit, an alleged email communication of February 6, 2024, where plaintiffs asked IDNR if a "response to their request for hearing was forthcoming." The last communication mentioned in the complaint, attached thereto as exhibit 5, was a letter from IDNR's General Counsel, Renee Snow, to plaintiffs. The letter informed plaintiffs that they were not entitled to a hearing, but were welcome to attend public meetings. It also stated, "The Department believes the tree cutting, herbicide use, and prescribed burning, are in furtherance of the Preserve's established purpose."

¶ 17    Ultimately, plaintiffs asked the circuit court to "enter judgment in favor of Plaintiffs and against Defendants as to count V, preliminarily a[n]d permanently enjoining Defendants from redacting the names of threatened and endangered species with habitat located on Illinois nature preserves in response[ ] to FOIA requests and from withholding responsive documents from FOIA requests." Plaintiffs also asked the circuit court to order "Defendants to provide complete and unredacted documents responsive to Plaintiffs' FOIA request ***, award Plaintiffs their attorneys' fees and costs and such other and further relief as the Court deems just."

8

¶ 18    Defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code. In the motion, defendants asserted, *inter alia*, that counts I-IV of plaintiffs' complaint should be dismissed pursuant to section 2-619 of the Code where plaintiffs did not have standing to sue because their injury was not distinct and palpable, but rather were "issues common to the public." Defendants also asserted that counts I-IV were barred by the doctrine of sovereign immunity. Defendants further asserted that count V should be dismissed pursuant to section 2-615 of the Code because plaintiffs' allegations were too vague and failed to state "what specific records they sought that were not provided." Defendants further argued that a FOIA request must request specific documents, and an agency is not under any obligation to answer questions beyond providing the documents specifically requested.

¶ 19    Plaintiffs filed a response in opposition to defendants' section 2-619.1 combined motion to dismiss. Plaintiffs asserted that they did have standing. Plaintiffs cited section 15(a)(5) of the Illinois Prescribed Burning Act (525 ILCS 37/15(a)(5) (West 2022)), for the first time, and asserted that their proximity to the CHNP "in a rural area shows that they have a distinct and palpable interest in the CHNP." Plaintiffs argued that their complaint sought injunctive relief, not damages, and therefore sovereign immunity did not bar their claims. Plaintiffs also asserted that they did request specific documents, stating that they need not attach their FOIA requests to their complaint, and claimed that even if "a failure to attach a FOIA request dooms Count V, this claimed deficiency is easily remedied. Plaintiffs attach hereto as Exhibit 1 the Affidavit of Mark Donham, to which are attached FOIA requests dated October 13 and December 1, 2023, along with the November 20, 2023 response letter." Plaintiffs did not seek to amend their original complaint.

¶ 20    In the October 13, 2023, email, which was not attached as an exhibit to the complaint, plaintiffs allegedly requested: (1) all correspondence or documentation of correspondence between

9

Holtrop, Feng, "the Director," and any other IDNR employee or any other person outside of the agency regarding the management of the CHNP and/or the "Azotus State Natural Area" within the last year; (2) all pre-burn and post-burn plans, reports, studies, and monitoring reports relating to any prescribed fires on either the CHNP and/or the Azotus State Natural Area within the last year; and (3) the smoke management plan which IDNR operated under relating to CHNP and/or the Azotus State Natural Area. In the December 1, 2023, email that was not attached as an exhibit to the complaint, plaintiffs allegedly "request[ed] to see th[e] paper trail for the March 8, 2023 prescribed burn and the prep work at the CHNP in S. Pope County, Illinois. [Plaintiffs were] particularly interest[ed] in the proposal, the budget request, and the final approval, although [their] request [wa]s for the entire paper trail from concept to implementation of the specific project." The November 20, 2023, email that plaintiffs did not attach to their complaint was allegedly from a FOIA officer to plaintiffs, granting in part and denying in part their request, stating that the partial denial was pursuant to sections 7(1)(b), 7(1)(c), 7(1)(f), and 7(1)(i) of FOIA (5 ILCS 140/7(1)(b), (c), (f), (i) (West 2022)).

¶ 21    Defendants filed a reply in support of their motion to dismiss. Defendants reasserted many of the points raised in their combined motion to dismiss. Defendants asserted additionally that, "In tacit acknowledgment of the factual deficiencies in the Complaint, Plaintiffs turn to the Affidavit of Mark Donham to fill in the gaps with new facts." Defendants went on to argue that the circuit court could not consider those additional facts, as they were outside of the complaint.

¶ 22    A hearing on the motion to dismiss was held. The matter was taken under advisement. On September 22, 2025, the circuit court entered an order granting defendants' motion as to all counts. The circuit court dismissed counts I, III, and IV with prejudice pursuant to section 2-619 on grounds of sovereign immunity. The circuit court dismissed count V with prejudice pursuant to

10

section 2-615 for failing to state a claim. Plaintiffs did not file a motion to reconsider the dismissal order. Plaintiffs filed a timely notice of appeal on October 8, 2025.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, plaintiffs assert that the circuit court erred when it dismissed counts I, III, and IV of the complaint on grounds of sovereign immunity. Plaintiffs also assert that it would not be proper to affirm the dismissal for the same three counts on the basis that plaintiffs lacked standing. Plaintiffs further assert that the circuit court erred when it dismissed count V for failing to state a claim.

¶ 25    Defendants on appeal assert that this court should affirm the dismissal of counts I, III, and IV, not on the basis of sovereign immunity, but due to plaintiffs' lack of standing. Defendants also assert that the circuit court properly dismissed count V for failing to state a claim. For the following reasons, we agree with defendants that the circuit court did not err in granting their motion to dismiss all counts with prejudice.

¶ 26                                    1. Standing

¶ 27    "A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the plaintiff's complaint but asserts that the claim against the defendant is barred by an affirmative matter that avoids the legal effect of or defeats the claim." *Kuykendall v. Schneidewind*, 2017 IL App (5th) 160013, ¶ 32 (citing 735 ILCS 5/2-619(a)(9) (West 2014); *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55) " 'Lack of standing is an "affirmative matter" that is properly raised under section 2-619(a)(9).' " *Petta v. Christie Business Holding Co.*, 2023 IL App (5th) 220742, ¶ 13 (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999)). "The defendant has the initial burden of establishing that an affirmative matter defeats the plaintiff's claim, and if satisfied, the burden shifts to the plaintiff to demonstrate that the proffered affirmative matter is either unfounded, or

11

requires the resolution of a material fact." *Kuykendall*, 2017 IL App (5th) 160013, ¶ 32 (citing *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997; *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 115, 116 (1993)). "When ruling on a motion to dismiss under section 2-619(a)(9), the trial court must accept as true all well-pleaded facts in the plaintiff's complaint and all reasonable inferences that may be drawn, and it must construe the pleadings and supporting documents in a light most favorable to the nonmoving party." *Id.* ¶ 33 (citing *Sandholm*, 2012 IL 111443, ¶ 55). "A court does not accept as true, however, legal conclusions or conclusory factual allegations that are not supported by specific factual allegations." *Bradish v. Aperion Care Marseilles, LLC*, 2025 IL App (3d) 240108, ¶ 14 (citing *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 59) "A motion to dismiss under section 2-619(a)(9) presents a question of law that is reviewed *de novo*." *Kuykendall*, 2017 IL App (5th) 160013, ¶ 33 (citing *In re Estate of Boyar*, 2013 IL 113655, ¶ 27).

¶ 28    "It is the judgment and not what else may have been said by the lower court that is on appeal to a court of review." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983) (citing *Rabus v. Calcari*, 16 Ill. 2d 99 (1959); *Gould v. Gould*, 408 Ill. 526 (1951)). "[A] court of review is not bound to accept the reasons given by a circuit court for its judgment and the judgment may be sustained upon any ground warranted, regardless of whether the circuit court relied upon such ground and regardless of whether the reason given by the circuit court was correct." *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993) (citing *Material Service Corp.*, 98 Ill. 2d at 387).

¶ 29    Standing requires a legally cognizable interest that is: (1) actual or threatened, (2) distinct and palpable, (3) fairly traceable to the defendant's actions, and (4) substantially likely to be prevented or redressed by the grant of the requested relief. *Greer v. Illinois Housing Development*

*Authority*, 122 Ill. 2d 462, 492-93 (1988). A distinct and palpable injury is not one that is a generalized grievance common to all members of the public. *Id.* at 494. A party cannot gain standing merely through a self-proclaimed interest or concern about an issue. *Petta*, 2023 IL App (5th) 220742, ¶ 13.

¶ 30    Counts I and III seek injunctive relief. "To establish standing in a suit seeking injunctive relief, the complaining party must establish that he has a clearly ascertainable right or interest which needs protection." (Internal quotation marks omitted.) *Cedarhurst of Bethalto Real Estate, LLC v. Village of Bethalto*, 2018 IL App (5th) 170309, ¶ 28. "The party must claim injury to a substantive interest he possesses which is recognized by statute or common law." (Internal quotation marks omitted.) *Id.* "The injury must directly impact his property or rights and cannot be abstract." *Id.* "The doctrine is designed to insure that the courts are accessible to resolve actual controversies between parties and not address abstract questions, moot issues, or cases brought on behalf of others who may not desire judicial aid." (Internal quotation marks omitted.) *Id.*

¶ 31    As to both counts I and III, plaintiffs have not alleged that they possess any substantive interest in the CHNP or the master plan for CHNP which is recognized by statute or common law. Nor do they allege that they suffered a distinct and palpable injury traceable to defendants' conduct in the development of the master plan for CHNP. At various points in their complaint, plaintiffs allege that they have an interest in the CHNP as adjoining landowners and as members of the public. Though plaintiffs alleged that Rhodes was sensitive to smoke, and that his health was adversely impacted by exposure to smoke from a controlled burn on March 8, 2023, they do not raise any error in the court's dismissal of count II wherein money damages were sought for this alleged harm.

¶ 32    While the allegations in count II concerning Rhodes' health were incorporated within the other counts of the complaint, the basis for the relief plaintiffs are seeking in the counts at issue involves alleged violations of their due process rights and concerns over the lack of public input in the development and enforcement of the master plans for CHNP. Notably, they point to no laws or regulations requiring that master plans for nature preserves address controlled burn practices.

¶ 33    Plaintiffs raise only conclusory allegations that "[p]laintiffs *and the public* have suffered and are suffering irreparable harm." (Emphasis added.) They further allege in conclusory fashion that, "The balance of harms and the *public interest* clearly favor Plaintiffs, who are seeking to have agencies funded by taxpayers follow their own rules for the benefit of *current and future Illinois citizens*." (Emphases added.) Plaintiffs' constant references to them seeking a change for the public's benefit establish that they are asserting a "generalized grievance common to all members of the public." For these reasons, the circuit court correctly dismissed counts I and III with prejudice.

¶ 34    In count IV, plaintiffs sought a declaratory judgment. "To establish standing in a declaratory judgment suit, there must be an actual controversy between the parties." *Cedarhurst of Bethalto Real Estate, LLC*, 2018 IL App (5th) 170309, ¶ 23. "An actual controversy is defined as being a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." (Internal quotation marks omitted.) *Id.* "In addition, the party seeking declaratory relief must possess a personal claim, status, or right that could be affected if relief would be granted." *Id.*

¶ 35    Plaintiffs have not alleged that they would be directly injured by the development or enforcement of the CHNP master plan. Plaintiffs have not alleged "a personally substantive interest recognized by statute or common law that must be protected." *Id.* ¶ 29.

14

¶ 36    Although they complain of controlled burns affecting their property, and the health of Rhodes from past smoke infiltration, they do not cite any governmental rule, regulation, or handbook requirement that the master plan for CHNP must address the issue of controlled burns. Nor do plaintiffs allege that future controlled burns will diminish the value of their land. As such, plaintiffs have not alleged an actual or threatened injury that is distinct to them. Rather, they raise general concerns about how the master plan may affect CHNP and the public's use of CHNP. They not only seek declaratory relief applicable to CHNP, but also other nature preserves in Illinois. They have not alleged an actual controversy with the defendants as they do not possess a personal claim, status, or right capable of being rectified by declaratory relief . As such, the circuit court correctly dismissed count IV with prejudice.

¶ 37                    2. The Freedom of Information Act

¶ 38    The circuit court dismissed count V for failure to state a claim pursuant to section 2-615 of the Code. "A motion under section 2-615 of the Code of Civil Procedure attacks the legal sufficiency of the complaint." *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004) (citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994)). "Such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint." *Id.* (citing *Illinois Graphics Co.*, 159 Ill. 2d at 484; *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8 (1992)). "[T]he question presented by a section 2-615 motion is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Id.* (citing *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996)). "[T]he general policy favoring a liberal construction of the pleadings *** cannot cure a plaintiff's failure to set forth well-pleaded facts." *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 462 (2008) (citing *Teter v.

15

*Clemens*, 112 Ill. 2d 252, 256-57 (1986)). "A court of review determines *de novo* whether the trial court should have granted dismissal." *Canel*, 212 Ill. 2d at 318 (citing *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003)).

¶ 39 It is provided in FOIA that "[e]ach public body shall make available to any person for inspection or copying all public records." 5 ILCS 140/3(a) (West 2024). "The 'purpose of the FOIA is to open governmental records to the light of public scrutiny.' " *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415-16 (2006) (quoting *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989)). "FOIA (1) 'is not designed to compel the compilation of data the governmental body does not ordinarily keep' and (2) 'does not compel the agency to provide answers to questions posed by the inquirer.' " *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 34 (quoting *Kenyon v. Garrels*, 184 Ill. App. 3d 28, 32 (1989)). "A request to inspect or copy must reasonably identify a public record and not general data, information, or statistics." *Id.* ¶ 33 (citing *Kenyon*, 184 Ill. App. 3d at 32).

¶ 40 Plaintiffs assert that count V stated a claim upon which relief could be sought concerning defendants' responses to their FOIA requests. Plaintiffs point to conclusory allegations in the complaint, where they assert that defendants "failed to provide complete responses in that they withheld communications concerning the CHNP management plan between Ms. Feng and Roger Jansen *** and, *** improperly redacted the names and species of endangered and threatened species located or likely to be found on the CHNP." Of significance, *none* of the exhibits to the complaint, nor the communications alleged within the complaint, involve specific requests for documentation in the possession of defendants pertaining to these alleged communications or the identity of endangered and threatened species in CHNP. Plaintiffs rely on exhibits filed in

16

opposition to defendants' motion to dismiss in support of these allegations. However, it is well-established that the circuit court is limited to a review of the complaint and the exhibits attached thereto in ruling on a section 2-615 motion to dismiss. See *Canel*, 212 Ill. 2d at 317. On its face, count V does not sufficiently state a claim. Plaintiffs never sought leave to amend their complaint to include any additional information supporting their claim. Therefore, as there are no well-pleaded facts establishing defendants' alleged violation of FOIA, the circuit court did not err in dismissing count V with prejudice.

¶ 41                                    III. CONCLUSION

¶ 42    Therefore, we affirm the dismissal of plaintiffs' complaint with prejudice.


¶ 43    Affirmed.